IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**STEPHEN F.,**

  **Plaintiff,**

v.              Case No.: 3:22-cv-00413

**KILOLO KIJAKAZI,**
**Acting Commissioner of the**
**Social Security Administration,**

  **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

  This action seeks a review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending are the parties' briefs requesting judgment on the pleadings in their favor. (ECF Nos. 6, 7). The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's motion be **GRANTED** to the extent that it requests remand of the Commissioner's decision, (ECF No. 6); the Commissioner's motion for judgment on the pleadings be **DENIED**, (ECF No.

7); the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g); and this case be **DISMISSED**, **with prejudice,** and removed from the docket of the Court.

## I. Procedural History

On January 7, 2020, Plaintiff Stephen F. ("Claimant") protectively filed for DIB, alleging a disability onset date of August 19, 2016 due to "anxiety/depression, hearing loss, hypertension, thyroid issues, and radiation in head and neck in 2000." (Tr. at 484, 518). The Social Security Administration ("SSA") denied Claimant's application initially and upon reconsideration. (Tr. at 11). Claimant subsequently filed a request for an administrative hearing, which was held on December 29, 2021 before the Honorable Mark Baker, Administrative Law Judge (the "ALJ"). (Tr. at 326-53). On January 11, 2022, the ALJ issued a written decision, finding that Claimant was not disabled as defined in the Social Security Act. (Tr. at 8-29). The ALJ's decision became the final decision of the Commissioner on July 29, 2022 when the Appeals Council denied Claimant's request for review. (Tr. at 1-7).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 1). The Commissioner subsequently filed a Transcript of the Administrative Proceedings. (ECF No. 5). Thereafter, Claimant filed a Brief in Support of Complaint, (ECF No. 6), and the Commissioner filed a Brief in Support of Defendant's Decision, (ECF No. 7), to which Claimant filed a reply, (ECF No. 8). The Commissioner also filed a Notice of Supplemental Authority. (ECF No. 9). Consequently, the matter is fully briefed and ready for resolution.

## II. Claimant's Background

Claimant was 59 years old on his alleged disability onset date and 63 years old on

the date of the ALJ's decision. (Tr. at 23). He has the equivalent of a high school education, communicates in English, and previously worked as a cashier and laborer for Habitat for Humanity and as a musician. (Tr. at 517, 519).

### III. Summary of the ALJ's Decision

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. § 404.1520. The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 404.1520(c). If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* § 404.1520(d). If the impairment does, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 404.1520(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the

3

performance of past relevant work. *Id.* § 404.1520(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, as the fifth and final step in the process, that the claimant is able to perform other forms of substantial gainful activity, when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. § 404.1520(g); *see also McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. § 404.1520a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* § 404.1520a(b). If an impairment exists, the ALJ documents such findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 404.1520a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* § 404.1520a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the

4

evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* § 404.1520a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* § 404.1520a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* § 404.1520a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status requirements for DIB through December 31, 2023. (Tr. at 13, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since his alleged onset date. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: obesity, hearing loss, degenerative disc disease (cervical spine spondylosis), sciatica, and hypothyroidism. (*Id.*, Finding No. 3). The ALJ also considered Claimant's history of oropharyngeal cancer, hypertension, hyperlipidemia, right arm impairment, headaches, anxiety, and depression, but the ALJ found that the impairments were non-severe. (Tr. at 14-15).

Under the third inquiry, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 15-18, Finding No. 4). Accordingly, the ALJ found that Claimant possessed:

> [T]he residual functional capacity to perform medium work, as defined in 20 CFR 404.1567(c), except: frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch, and crawl; occasional exposure to extreme cold and heat; occasional exposure to dust, odors, fumes, and pulmonary irritants; occasional exposure to vibrations; occasional exposure to unprotected heights and moving, mechanical parts; occasional operation of foot controls with the right lower extremity; limited to moderate background noise (e.g. business office, department store, grocery store, or light traffic).

(Tr. at 18-22, Finding No. 5).

At the fourth step, the ALJ determined that Claimant could not perform any past relevant work. (Tr. at 22, Finding No. 6). Therefore, the ALJ reviewed Claimant's work experience, age, and education in combination with his RFC to determine his ability to engage in other substantial gainful activity. (Tr. at 23-24, Findings 7 through 10). The ALJ considered that (1) Claimant was born in 1958 and was defined as an individual of advanced age on his alleged onset date, (2) he had at least a high school education, and (3) transferability of job skills was not an issue because the Medical-Vocational Rules supported a finding that he was "not disabled" regardless of his transferable job skills. (Tr. at 23, Findings 7 through 9). Taking into account these factors, Claimant's RFC, and the testimony of a vocational expert ("VE"), the ALJ found that Claimant could perform other jobs that existed in significant numbers in the national economy, including work as a sandwich maker, dining room attendant, and general helper. (Tr. at 23-24, Finding No. 10). Consequently, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act and was not entitled to benefits. (Tr. at 24, Finding No. 11).

**IV.     Claimant's Challenges to the Commissioner's Decision**

Claimant asserts two challenges to the Commissioner's decision, arguing that the disability decision must be remanded because (1) the ALJ failed to adopt or reject Dr. Smith's prior administrative finding concerning moderate noise and (2) the ALJ and Appeals Council were not properly appointed to adjudicate the case. (ECF Nos. 6 at 3-9, 8 at 1-9). In response, the Commissioner argues that Nancy Berryhill was validly serving as Acting Commissioner when she ratified and approved the appointments, Claimant is not entitled to remand for a new hearing, and the ALJ's evaluation of the prior administrative findings is supported by substantial evidence. (ECF Nos. 7 at 6-20, 9 at 1, 10 at 1).

**V.     Relevant Medical History**

The undersigned reviewed all of the evidence before the Court. The evidence that is most relevant to the instant matter is summarized as follows.

### *A. Treatment Records*

On August 9, 2018, Claimant presented to otolaryngologist Joseph B. Touma, M.D., for bilateral hearing loss that was worse on the right. (Tr. at 619). He explained that he was exposed to significant noise for many years as a drummer in the Billy Ray Cyrus band. (*Id.*). On examination, Claimant could hear conversational voices well with his right hearing aid in place. (Tr. at 620). Dr. Touma diagnosed Claimant with downsloping sensorineural hearing loss in his left ear and severe to profound mixed loss in his right ear. (Tr. at 621).

Claimant saw otolaryngologist Scott Gibbs, M.D., on May 12, 2020, for neck pain, sinus drainage, and hearing loss. (Tr. at 792). Dr. Gibbs diagnosed Claimant with asymmetric hearing that was worse on the right with mixed moderate to profound loss.

7

(Tr. at 794). Claimant explained that he had a history of noise exposure as a drummer and also experienced right hearing loss following radiation for cancer nearly 20 years earlier, and the condition progressively worsened over time. (Tr. at 792, 794). Dr. Gibbs ordered a brain MRI to rule out a retrocochlear lesion. (Tr. at 794).

On July 21, 2020, Dr. Gibbs noted that the MRI showed right mastoid effusion rather than cochlear pathology. (Tr. at 802, 845). On examination, Claimant could communicate normally, but his right ear drum was thickened, and he exhibited hearing loss, particularly on the right. (Tr. at 803). Dr. Gibbs diagnosed Claimant with asymmetrical hearing loss and restricted hearing in the right ear and mixed conductive and sensorineural hearing loss in the left ear. (Tr. at 804).

### B. *Evaluation and Prior Administrative Findings*

On July 28, 2020, Laura Cunnings, FNP-C, performed a consultative physical examination of Claimant. Claimant reported that his hearing was "falling at an alarming rate," and it was the primary reason that he was applying for disability benefits. (Tr. at 820). Claimant's hearing appeared adequate for normal conversation, although he asked Nurse Practitioner Cunnings to repeat herself twice. (Tr. at 821-22).

On August 3, 2020, state agency physician James B. Smith, M.D., assessed Claimant's RFC based on his review of Claimant's records, including Claimant's consultative examination report. Dr. Smith concluded that Claimant did not have any exertional or postural limitations, but he had communicative limitations. (Tr. at 363-64). Specifically, Claimant had limited hearing bilaterally. (Tr. at 364). Dr. Smith did not assess environmental restrictions regarding noise exposure, but found that Claimant should avoid even moderate exposure to vibration. (*Id.*). Overall, Dr. Smith stated that Claimant should avoid moderate noise and would function best in a quiet work

environment such as a private office. (Tr. at 365). He could perform hearing tasks frequently within a private office type setting. (*Id.*).

At the reconsideration level of review, on December 3, 2020, state agency physician Uma Reddy, M.D., concluded that Claimant could perform medium exertional work that involved frequent postural activities and no concentrated exposure to certain environmental conditions, including noise. (Tr. at 383-85). Dr. Reddy found that Claimant could frequently hear bilaterally due to the use of hearing aids. (Tr. at 385).

### C. *Claimant's Testimony*

Claimant testified during his telephonic administrative hearing on December 29, 2021 that he was wearing hearing aids, but he still had to hold the telephone speaker right next to his left ear in order to hear well enough. (Tr. at 335). He related that his music career ended in 2016 when his employer, Billy Ray Cyrus, moved from Nashville to Los Angeles. (Tr. at 334-35). Claimant took a part time job with Habitat for Humanity to stay busy and continued operating his commercial kitchen cleaning business that he owned since 1989. (Tr. at 335). However, Claimant was reportedly having significant trouble with his hearing at that time. (Tr. at 335). For instance, he did not hear the bell of a forklift backing up when working for Habitat for Humanity and had trouble hearing and making calls for his cleaning business. (Tr. at 335, 342). Claimant sold his business and had not worked since 2018 because he was "such a liability" due to his hearing. (Tr. at 335-36, 342). Claimant wore hearing aids, but he had issues with them because he sometimes perspired excessively due to a lingering side effect of prior cancer treatment. The moisture shorted out two of his $2,500.00 hearing aids. (Tr. at 342-43). Claimant stated that he ordered protective shields for them, but they still became damp. (Tr. at 343).

## VI. Scope of Review

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In Blalock v. Richardson, the Fourth Circuit Court of Appeals defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

483 F.2d 773, 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to insuring that the ALJ followed applicable Regulations and Rulings in reaching his or her decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

## VII. Discussion

Claimant challenges the ALJ's analysis of his hearing impairment and the authority of the ALJ and Appeals Council to adjudicate his case. Each argument is considered below, in turn.

### A. *Hearing Impairment*

Claimant contends that the ALJ erred by not adopting or rejecting the moderate hearing limitations assessed by Dr. Smith. Claimant points out that, although the ALJ

10

found Dr. Smith's prior administrative findings persuasive in the RFC assessment, the ALJ essentially assessed the direct opposite hearing limitations without any explanation for them.[1] SSR 96-8p provides guidance on how to properly assess a claimant's RFC, which is the claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. RFC is a measurement of the ***most*** that a claimant can do despite his or her limitations resulting from both severe and non-severe impairments, and the finding is used at steps four and five of the sequential evaluation to determine whether a claimant can still do past relevant work and, if not, whether there is other work that the claimant is capable of performing. *Id.*

According to SSR 96-8p, the ALJ's RFC determination requires "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3. The functions which the ALJ must assess include a claimant's physical abilities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); mental abilities, such as understanding, remembering, and carrying out instructions and responding appropriately to supervision, coworkers, and work pressures in a work setting; and other abilities, such as seeing and hearing. 20 CFR § 404.1545(b)-(d).

Only by examining specific functional abilities can the ALJ determine (1) whether a claimant can perform past relevant work as it was actually, or is generally, performed; (2) what exertional level is appropriate for the claimant; and (3) whether the claimant "is

---

[1] As noted, Dr. Smith found that Claimant could not tolerate moderate noise whereas the ALJ found that Claimant could tolerate it.

11

capable of doing the full range of work contemplated by the exertional level." SSR 96-8p, 1996 WL 374184, at *3. Indeed, "[w]ithout a careful consideration of an individual's functional capacities to support an RFC assessment based on an exertional category, the adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." *Id*. at *4.

In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id*. at *7. Further, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. at *7. While an ALJ is not required to explicitly discuss "irrelevant or uncontested" functions, "[r]emand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)) (markings omitted).

As to the evidence that the ALJ must consider, the ALJ was not required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinions or prior administrative medical findings. 20 C.F.R. § 404.1520c(a). Rather, the ALJ was required to evaluate the persuasiveness of the opinions and findings based on five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) extent of the treatment relationship, and (5) other factors. 20 C.F.R. § 404.1520c(a), (c). The ALJ must articulate his or her consideration of the supportability and consistency of

the medical opinions and prior administrative medical findings, but the ALJ is not obligated to explain how he or she considered the other regulatory factors. 20 C.F.R. § 404.1520c(b)(2).

The term "supportability" means that a medical opinion or prior administrative finding is more persuasive if the medical source presented objective evidence and explanation to support it. *Id.* at § 404.1520c(c)(1). Furthermore, the law explains that a medical opinion or prior administrative finding is more persuasive if it is consistent with the evidence from other medical and nonmedical sources in the claim. *Id.* at § 404.1520c(c)(2). "Other factors" refers to evidence that tends to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(c)(5). It includes, but is not limited to, evidence showing that a medical source has familiarity with the other evidence in the claim or an understanding of the SSA's policies and evidentiary requirements. *Id.*

Given the fact that "many claims have voluminous case records containing many types of evidence from different sources," an ALJ is permitted to provide "source-level articulation" regarding the medical opinions and prior administrative findings. If a medical source provides multiple medical opinions or prior administrative medical findings, the ALJ can articulate how he or she considered the opinions or findings from that source "together in a single analysis" using the five aforementioned factors, as appropriate. 20 C.F.R. § 404.1520c(b)(1). The ALJ is not required to articulate how he or she considered each medical opinion or prior administrative medical finding from one medical source individually. *Id.*

In this case, the ALJ discussed the objective medical evidence of Claimant's hearing impairments, concluding that despite his hearing loss, Claimant's hearing

13

appeared adequate for normal conversation with the use of hearing aids. (Tr. at 19-20). The ALJ also considered the prior administrative findings. He cited Dr. Smith's August 2020 determination that Claimant should avoid moderate noise, would function best in a quiet work environment such as a private office, and could perform hearing tasks frequently within that setting. (Tr. at 21); *see* (Tr. at 365). The ALJ stated that he found Dr. Smith's opinion "persuasive in part." (Tr. at 21). The ALJ explained that Dr. Smith supported the hearing limitations by referencing Claimant's moderate to profound mixed hearing loss on the right with normal sloping to moderate sensorineural hearing loss on the left. (*Id.*). However, the ALJ concluded that the record supported greater exertional, environmental, and foot control limitations than Dr. Smith assessed. (Tr. at 21). The ALJ also cited Dr. Reddy's December 2020 assessment that Claimant could frequently hear with both ears and should avoid concentrated exposure to noise. (Tr. at 21); *see* (Tr. at 385). The ALJ stated that Dr. Reddy's opinion was "generally persuasive." (Tr. at 21). He noted that Dr. Reddy supported the hearing limitations by referencing Claimant's use of hearing aids for hearing loss. (*Id.*). Ultimately, the ALJ concluded that Claimant had the RFC to tolerate moderate background noise, such as working in a business office, department store, grocery store, or light traffic, but the totality of the evidence did not support greater restrictions. (Tr. at 18, 22).

      The ALJ did not explain in the decision how he arrived at the conclusion that Claimant could tolerate moderate noise, and the basis for that limitation is not clear from any of the opinions, prior administrative findings, or other evidence in the record. The ALJ definitely stated that he found Dr. Smith's opinion "persuasive in part." However, the ALJ explained that Dr. Smith "supported" his findings regarding Claimant's hearing loss; the ALJ provided no reason whatsoever to discount the hearing limitations assessed by

14

Dr. Smith. Instead, the ALJ seemed only to disagree with Dr. Smith's opinions regarding Claimant's postural, exertional, and other environmental limitations, with the ALJ finding Claimant to be more limited than assessed by Dr. Smith.

Undoubtedly, the ALJ was not required to adopt the prior administrative findings or give them any specific evidentiary weight. However, the ALJ was obligated to logically explain the basis for the RFC finding. Here, the ALJ did quite the opposite. He specifically mentioned several findings made by Dr. Smith. (Tr. at 21). He then indirectly agreed with two of them—(1) to avoid even moderate noise and (2) to avoid even moderate vibrations—finding those limitations were supported by the evidence, i.e. Claimant's moderate to profound hearing loss and use of sedating pain medications. He stated that Dr. Smith's findings were only partially persuasive, however, and proceeded to explain his disagreement with other postural, environmental, and exertional limitations. Accordingly, based on this discussion by the ALJ, the RFC should have limited Claimant to *less than* moderate exposure to noise. The fact that the RFC does not include that limitation, or any further explanation for the noise limitation selected, leaves an obvious and unresolved conflict in the ALJ's decision.

The Commissioner argues that, to the contrary, the moderate noise RFC restriction actually resulted from the ALJ resolving a different conflict in the evidence where Dr. Smith stated, on one hand, that Claimant did not have any environmental limitations related to noise, but later stated that Claimant should avoid moderate noise. (ECF No. 7 at 19). The Commissioner offers nothing to support this *post hoc* rationalization. The ALJ did not, in any way, indicate that he assessed the moderate noise limitation based on inconsistencies in Dr. Smith's findings. He only stated that Dr. Smith's findings were partially persuasive. The ALJ also indicated that the hearing and vibrations limitations

15

were supported by the evidence, while the other limitations were not restrictive enough. The Commissioner's argument amounts to pure speculation regarding the ALJ's reasoning and analysis.

The Commissioner also relies on the fact that the ALJ was only required to provide "source-level articulation" of Dr. Smith's prior administrative findings, and did not have to account for each finding individually. (*Id.*). Nevertheless, the error in this case was not simply that the ALJ failed to reconcile Dr. Smith's hearing limitation with his own finding, but that the ALJ did not explain the moderate noise limitation at all. The "source-level articulation" standard did not absolve the ALJ from explaining the basis for the RFC finding. While the ALJ was not required to dissect Dr. Smith's findings, he was required to provide sufficient information regarding the RFC limitations so that the Court could understand the rationale behind them and determine whether they were supported by substantial evidence. It is unclear how the ALJ settled upon the moderate noise limitation in this case, which precludes meaningful review.

Furthermore, the error cannot be considered harmless in this instance. Claimant asserted disability primarily because of hearing loss. (Tr. at 342, 518, 686, 820). The jobs that the ALJ relied upon at step five all involve moderate noise exposure. *See* Sandwich Maker, DOT 317.664-010, 1991 WL 672749; Dining Room Attendant, DOT 311.677-018, 1991 WL 672696; General Helper, DOT 529.687-094, 1991 WL 674758. Therefore, it is critical to determine whether the ALJ's RFC finding that Claimant could tolerate moderate noise exposure is supported by substantial evidence. The Court cannot make that determination under the current record.

For those reasons, the undersigned **FINDS** that the ALJ's RFC analysis regarding Claimant's noise restrictions is not supported by substantial evidence. Accordingly, the

undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED** and that this case be **REMANDED** so that the ALJ may reexamine or elaborate upon his RFC finding concerning Claimant's ability to tolerate moderate noise in a work environment.

### B. *Authority of ALJ and Appeals Council*

Claimant also argues that the ALJ and Appeals Council that ruled upon his disability application were not properly appointed to adjudicate his case, and the matter must be remanded to a properly appointed ALJ for a *de novo* hearing and decision. (ECF No. 6 at 8-9). This issue is likely moot because the undersigned recommends that the matter be remanded for the above-stated reason. However, the undersigned notes that this challenge is without merit. Claimant argues that Nancy Berryhill was illegally serving as Acting Commissioner of the SSA on July 16, 2018 when she ratified the appointments of the ALJ and Appeals Council judges who decided his case. (*Id.* at 8).

In support of this challenge, Claimant relies on out-of-circuit rulings from the United States District Court for the District of Minnesota, which, since the filing of Claimant's reply brief, have been reversed on appeal by the United States Court of Appeals for the Eighth Circuit. *Dahle v. Kijakazi*, 62 F.4th 424, 429 (8th Cir. 2023) ("Berryhill was properly serving as Acting Commissioner when she ratified the appointment of the SSA ALJs."). The United States Court of Appeals for the Fourth Circuit has recently reached the same conclusion as the Eighth Circuit in *Rush v. Kijakazi*, --- F.4th ---, No. 22-1797, 2023 WL 2877081, at *7 (4th Cir. Apr. 11, 2023) ("Berryhill therefore was properly serving as SSA Acting Commissioner when she ratified the ALJs' appointments.").

Therefore, given the fact that the Fourth Circuit has conclusively ruled on this issue, and its decision is controlling in this Court, the undersigned **FINDS** that Claimant does not assert a viable challenge to the Commissioner's decision under the Federal

Vacancies Reform Act or Appointments Clause of the United States Constitution.

## VIII. Recommendations for Disposition

For the above reasons, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **GRANT** Plaintiff's motion to the extent that it requests remand of the Commissioner's decision, (ECF No. 6); **DENY** Defendant's request to affirm the decision of the Commissioner, (ECF No. 7); and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:** May 3, 2023

Cheryl A. Eifert
United States Magistrate Judge